Marquis D. Moore, Admr.

*v.*

Benjamin Wood *et al.*

*Filed at Mt. Vernon May 11, 1881—Rehearing denied November Term, 1881.*

1.  Fraudulent conveyance—*to hinder and delay creditors—secret trust.* A debtor can not convey real estate to another, to be held, wholly or in part, in secret trust for himself, so as to cut off the rights of existing creditors;—for although such a transaction may be upon a valuable consideration, yet it lacks the element of good faith.   While it professes to be an absolute conveyance on its face, there is a concealed agreement between the parties to it inconsistent with its terms, securing a benefit to the grantor at the expense of those he owes.   A trust thus secretly created, whether so intended or not, is a fraud on creditors, because it places beyond their reach a valuable right, and gives to the debtor the beneficial enjoyment of what rightfully belongs to them.

2.  Where the secret trust reserves to the grantor future support, the *gist* of the objection to the transaction consists, not in the amount to be paid to the grantor on that account, but in the fact that the promise of future support forms part of the consideration as an inducement to the transfer.   Where it is shown that the present consideration is inadequate to satisfy his debts, whatever may be the amount secured to the debtor, the law, instead of endeavoring to determine what part of the consideration is money or other property, and what part is to be paid in future support of the grantor, and holding the grantee responsible for the latter sum, will treat the conveyance as a nullity, as between the grantee and the creditors of the grantor, and hold the property liable for their claims.

3.  Same—*evidence in rebuttal.* Evidence is admissible, however, upon the question of fact whether a secret trust really does exist.   If the future support provided for was a mere gratuity tendered by the grantee, then it would be subject to be revoked at any time, and could not, even as between them, create a trust.   But, presumptively, where the future support of the grantor is reserved, it represents an equivalent value in the property conveyed,—so the burden is upon the grantee to overcome such presumption by a clear and satisfactory preponderance of evidence.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. H. S. PETTINGILL, and Mr. F. W. BURNETT, for the appellant.

Messrs. KROME & HADLEY, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This case comes here by appeal from the decision of the Appellate Court for the Fourth District. Bill in chancery was filed in the circuit court of Madison county by Marquis D. Moore, administrator of the estate of William H. Segar, deceased, against Benjamin Wood and Isham W. Johnson, to set aside a conveyance of real estate executed by Wood to Johnson on the 15th day of March, 1877, on the ground that such conveyance was made to hinder and delay creditors. On hearing, the circuit court found that the conveyance was made to hinder and delay creditors, and decreed that the same was fraudulent and void as against the rights of creditors, and should therefore be set aside, etc. The Appellate Court reversed this decree, and directed that the bill be dismissed.

There are a few facts which we deem of controlling importance about which there is no dispute. Wood and wife were childless, and Johnson, being a nephew of Mrs. Wood, and an orphan, when about eight years of age was adopted by them as a member of their family, and he continued to reside with them as such until after the transactions involved in this controversy. Wood was indebted in an amount equal to or in excess of the entire value of all of his property, a portion of which, it is claimed, was to Johnson. He conveyed all of his real estate except the right of homestead, and

assumed to sell the bulk of his personal property, including farming machinery and implements (not retaining any personal property subject to execution), to Johnson. The alleged consideration for this was the satisfaction of Johnson's debt, the assumption by him of certain other preferred debts of Wood, and the furnishing to Wood and wife of a support on the land during their lives. Wood and wife continued to occupy the principal dwelling house after as before the conveyance, and there was no outward and visible change of ownership at or near the conveyance and alleged sale of any of the property. Both before and after that time Wood and Johnson indiscriminately, and as convenience seemed to require, used and controlled the property. By the express terms of the agreement of sale, pursuant to which the conveyance was made, Wood and wife were to remain in the dwelling house and have a living off the place.

About this there is no dispute. Both Johnson and Wood admit in their answers, and testify, when examined as witnesses, to this effect. The deed shows no such reservation, but the admitted fact is, Johnson accepted it in secret trust for this use of Wood and wife, and he has so held it since.

Johnson, in giving his testimony, says: "The bargain was that I was to assume the debts on the land, pay Mosier and John Atkins; I agreed to take everything there was there; he said if I could save myself, all he asked of me was to give him a home as long as he lived; the consideration that I have already stated was for the personal property and real estate; Wood said all he asked was for me to give him a living; Wood and family have had a living upon the premises since March, 1877; I can't say how much money Wood has received from produce of the farm, because the money is all kept with him that is used on the farm, and whenever there is enough to pay a debt it is paid out; he has charge of the money, and takes out what he needs; Wood does not render me an account of the money he uses; he uses the money as

he pleases; Mr. Wood receives from the farm the support of himself and family."

Again, he said: "Wood gets all the proceeds of the farm, and uses what he wants out of it."

Wood, in testifying, said that a part of the consideration for the transfer was that he and his family were to have a living off the place, and also that he used for that purpose what was necessary, and kept no account of the amount. He says that all the money from the proceeds of the place is left in the care of his wife, and this has been used in purchasing supplies for his family, and in paying off the debts assumed by Johnson. Wood says he himself paid about $1168, assumed by Johnson, to John Atkins, in part from the proceeds of sales of apples, and in part from money obtained for other products of the farm.

So far as regards the personal property, the sale was clearly within the second resolution in *Twyne's case,* (3 Coke's Rep. 80,) 1 Smith's Leading Cases, 33, and voidable at the instance of creditors. *Thornton* v. *Davenport,* 1 Scam. 296; *Kitchell* v. *Bratton,* id. 300; *Rhines* v. *Phelps et al.* 3 Gilm. 455; *Funk* v. *Staats,* 24 Ill. 633; *Rozier* v. *Williams,* 92 id. 187.

We think the conveyance of the real estate was also equally voidable at the instance of creditors. A debtor can not convey real estate to another to be held wholly or in part in secret trust for himself, so as to cut off the rights of existing creditors; for although, as was observed in *Lukin* v. *Aird,* 6 Wallace, 78, "such a transaction may be upon a valuable consideration, but it lacks the element of good faith; for while it professes to be an absolute conveyance on its face, there is a concealed agreement between the parties to it inconsistent with its terms, securing a benefit to the grantor at the expense of those he owes. A trust thus secretly created, whether so intended or not, is a fraud on creditors, because it places beyond their reach a valuable right,    * * *

and gives to the debtor the beneficial enjoyment of what rightfully belongs to his creditors."

The principle was announced and followed in *Guffin* v. *First National Bank of Morrison*, 74 Ill. 259, *Annis* v. *Bonar*, 86 id. 128, *Jones* v. *King*, id. 225, *Truitt* v. *Griffin*, 61 id. 26, *Power* v. *Alston*, 93 id. 587, *Robinson* v. *Stewart*, 10 N. Y. 195, *Goodrich* v. *Down*, 6 Hill, 438, *Jackson* v. *Parker*, 6 Cow. 84, *Beadle* v. *Delaney*, 6 Martin, (N. S.) 640, (Morgan's ed. vol. 9, p. 339,) *Macomber* v. *Peck*, 39 Iowa, 354, and *Coburn* v. *Pickering*, 3 N. H. 415.

In the last named case, RICHARDSON, C. J., lays down the rule that whether there was any trust is a question of fact; but the trust being proved or admitted, the fraud is an inference of law which the court must pronounce. His exact language, after a discussion of the authorities, is: "It thus seems to us to be settled, as firmly as any legal principle can be settled, that the fraud which renders void the contract in these cases is a secret trust accompanying the sale.   *   *   *   It is, therefore, very clear that fraud is sometimes a question of fact, and sometimes a question of law. When the question is, was there a secret trust, it is a question of fact; but when the fact of a secret trust is admitted, or in any way established, the fraud is an inference of law, which the court is bound to pronounce."

So, upon like principle, we held in *Phelps et al.* v. *Curts et al.* 80 Ill. 112, it is not important what motives may have animated the parties, if they have so disposed of the property that the necessary effect is to hinder and delay creditors. Such a disposition is, in judgment of law, a legal fraud. To the same effect, also, is *Power* v. *Alston, supra,* and *Emerson* v. *Bemis*, 69 Ill. 537.

"The *gist* of the objection," in cases like the present, it is said, "consists, not in the amount to be paid in future support, but in the fact that the promise of future support forms part of the consideration as an inducement to the transfer.

When it is shown that the present consideration is inadequate· to satisfy his debts, whatever may be the amount secured to the debtor, the law, instead of entering upon the task of determining what part of the consideration is money or other property, and what part is to be paid in future support of the grantor, and holding the grantee responsible to creditors for the latter sum, treats the conveyance as a nullity as between the grantee and the creditors, and holds the property liable for their claims." Bump on Fraudulent Conveyances, pp. 246–7; *Sidensparker* v. *Sidensparker*, 52 Me. 481.

But appellees contend that evidence may be given, and here was given, to show that Johnson paid the full value for the property conveyed, and that the reservation of the support for Wood and family is of no value to creditors, because they can not complain if Johnson assumed a burthen which was· not to their prejudice. This view of the law is sanctioned by Bump on Fraudulent Conveyances, at p. 247, and *Slater* v. *Dudley*, 18 Pickering, 373, and *Albee* v. *Webster*, 16 N. H. 362.

If the future support of Wood and family was a mere gratuity tendered by Johnson to Wood, it might at any time be revoked, and could not, of course, even as between them, create a trust, and evidence to that effect was therefore admissible to rebut the claim that there was a secret trust. But, as has been seen, the parties expressly repel, by their own testimony, the idea that the future support of Wood and family was a mere gratuity offered by Johnson to Wood. They both testify that it was a part of the consideration for the transfer and conveyance of the ·property, and Johnson is, therefore, no more at liberty to refuse to allow it to Wood and family than he is at liberty to refuse to make any of the payments of debts which he agreed to make. It was a valuable, substantial right, secured to Wood and his family, and presumptively represents an equivalent value in the property transferred and conveyed. The burden is on Johnson to

overcome this presumption by a clear and satisfactory preponderance of evidence. Such evidence, in our opinion, is not to be found in this record.

No useful end will be subserved by quoting and commenting upon the evidence *in extenso* in this opinion. We have carefully examined and considered it repeatedly, and we deem it sufficient to say it does not, in our opinion, clearly rebut the presumption arising from the contract which Johnson and Wood both testify they made. The facts that Wood retained no property subject to execution; that he reserved to himself and family a support from the property for life; that after the transfer and conveyance he retained the same homestead, and continued to exercise, with but slight modification, the same dominion over the property that he did before; and that the debts, payment of which was ostensibly assumed by Johnson, so far as they have since been paid, as is shown by Johnson's own testimony, have been paid from the products of the land, in part, at least, realized by reason of the supervision, care and management of Wood and wife, together with the evidence tending to show that the full value of the property, aside from the agreement to support Wood and wife, was not paid,—all coincide in stamping the transfer and conveyance as made in fraud of the rights of creditors.

Our conclusion is, the decree of the circuit court was right, and that the Appellate Court erred in reversing it and directing that the complainant's bill be dismissed.

The decree of the Appellate Court will, therefore, be reversed, and the cause remanded to that court with directions to affirm the decree of the circuit court.

*Decree reversed.*