KAIN v. LARKIN et al.

(Supreme Court, Appellate Division, Third Department. April 14, 1896.)

1. FRAUDULENT CONVEYANCE—WHO ARE CREDITORS.
   A voluntary conveyance of all of a grantor's property is fraudulent as against an administrator holding a claim, the amount of which has not been fixed, against the grantor for causing the death of his decedent.

2. SAME—CONSIDERATION—FUTURE SUPPORT.
   A conveyance of all of a grantor's property, a part of the consideration for which is the future support of the grantor or a member of his family, is fraudulent as against his existing creditors, although the balance of the consideration was for services rendered, irrespective of the knowledge of the grantee as to the claims against the grantor.

Appeal from special term.

Action by Margaret Kain, administratrix of the estate of David Kain, against Patrick Larkin and another. There was a judgment for defendants, and plaintiff appeals. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

G. R. Adams, for appellant.

F. L. & F. A. Westbrook (F. L. Westbrook, of counsel), for respondents.

PUTNAM, J.   On the 1st day of May, 1889, when Patrick Larkin delivered to his daughter, Maria E. Larkin, a deed of his house and lot in Kingston, N. Y., an action was pending against him, brought by Margaret Kain, as administratrix of David Kain, deceased, to recover damages for his wrongful act, by which the death of the decedent was caused, in which judgment was recovered on the 16th day of October, 1890, in favor of the plaintiff for $987.34 damages and $530.94 costs. Although the plaintiff's claim was founded on a tort, and its amount was undetermined at the time of the conveyance in question, Patrick Larkin could not defeat its collection by a fraudulent disposition of his real estate.   A deed executed to defraud one having a claim arising out of the commission of a wrongful act has no greater validity than one made to prevent the collection of a liability arising on a contract.   Martin v. Walker, 12 Hun, 46; Jackson v. Myers, 18 Johns. 425; Ford v. Johnston, 7 Hun, 563; Baker v. Gilman, 52 Barb. 26.   The plaintiff, therefore, at the time mentioned had a just claim against Patrick Larkin, the amount of which was undetermined, but was afterwards found to be $987.34, besides the costs of the action which had then accrued.   Before the execution of the deed from Patrick Larkin to his daughter, the former therefore had real estate worth $3,000, out of which plaintiff's demand could have been collected.   The necessary effect of the conveyance was to prevent the collection of any judgment the plaintiff might thereafter recover, as Patrick Larkin, besides the house and lot, had no other property except six or eight hundred dollars in money, which was insufficient to pay the plaintiff's demand, and which was afterwards expended by him in the payment of debts and living expenses.   We are called upon to determine whether, as against the plaintiff thus standing in the position of a creditor, the finding of the trial court that the deed in question was made by Patrick Larkin and received by Maria E. Larkin in good faith, and without any intent to defraud creditors or other persons, can be sustained.

There was evidence to the effect that, Maria E. Larkin being employed in the city of New York, Patrick Larkin requested her to go to Kingston, and take care of his wife, who was then ill; and agreed, if she would do so, that she would have, at some future period, the house and lot in question.   She came from New York on Christmas, 1888, and did take care of Mrs. Larkin until her death, about four months afterwards.   There was also some evidence to the effect that, prior to the said Christmas, Patrick Larkin had promised at some time to convey to his daughter the house and lot.   Such former promise, however, under the evidence, must be deemed a mere agreement to make a gift.   The trial court found that said conveyance of said house and lot was

made in consideration of the "promise and agreement of said Patrick to and with said Maria to convey it to her for her giving up her business and returning to his home to take care of his wife, and for and in consideration of the moneys invested therein by her deceased mother." A careful consideration of the evidence leads to the conclusion that such finding should not be sustained. It is true that the promise therein referred to may have entered into the consideration of the deed, but we think a decided preponderance of the evidence shows that at the time of the actual execution and delivery of such conveyance there was a further and other consideration agreed upon by the parties. The question is, what in fact was the actual consideration which the defendant Maria agreed to pay Patrick Larkin when the deed was executed and delivered? Any further agreement could be modified or changed by the grantor and grantee. In her deposition on her examination in supplementary proceedings Maria E. Larkin testified as follows:

"I came home on the condition that I should come home and he [her father] would recompense me for it. * * * That I should remain at home, and take care of her and him, and the place would be mine after a while; and I did so. * * * He gave me the deed, and told me to put it away; it was mine, and I should take care of it. He said, 'All I want is my support, and to be cared for during the rest of my life.' I promised to take care of him during the rest of his life, and that is part of the consideration of this deed to me. * * * He never agreed to convey the property until I returned from New York at the time my stepmother was sick. That was after he had returned from prison."

On her examination on the trial her statement of the facts is somewhat different. She said on her direct examination:

"My stepmother was sick, and not in her right mind, and he [Patrick Larkin] asked me to come and take care of her. He said he would do as he had promised to do before; he would deed me the property,—the house where we lived in. * * * Q. Under what agreement with your father? A. I remained under the agreement that he would deed me the place if I took care of her."

On cross-examination she said, in answer to the following question in regard to her testimony on her examination in supplementary proceedings:

"Q. In answer to this question, 'What was said at the time with reference to this deed?' did you say: 'He gave me the deed, and told me to put it away; it was mine, and I should take care of it. He said, "All I want is my support, and to be cared for during the rest of my life." I promised to take care of him during the rest of his life, and that is a part of the consideration of this deed to me.' A. He said that. I remember saying nothing. It was my intention. I meant to support him. I made no answer. Q. Did you so testify? A. I may have. Q. Didn't you promise to take care of him? A. I intended to do so. * * * I didn't promise it, though."

Of course, the deposition signed and sworn to by Maria E. Larkin was competent evidence against her.

As to Patrick Larkin, in his deposition (which was competent evidence against him) he said in answer to the following question:

"Q. The consideration states in consideration of natural love and the sum of one dollar? A. Yes, and for my daughter to support me in my old age. That answer is not written in the deed. That was a part of the consideration,—that she should support me in old age, and for her services before her mother died and since. That is not written in the deed. Q. Did you put this in your daughter's name for the purpose of protecting it? A. I did."

On the trial, however, he stated the consideration of the deed to be as follows:

"Part of the money her mother had in it, and for her own services, and for what her stepmother left her when she was taking care of her."

But he did not deny that the conversation between him and his daughter as stated in his deposition, which had been read in evidence when he was sworn, had in fact occurred. In his deposition he had testified:

"She said at the time I deeded it to her that she would take care of me in my old days, and that I would have a home with her. She promised to do that for me. I didn't know that it was necessary to insert that in the deed. I gave her that deed in consideration of her taking care of me."

The evidence in the case leads us to believe that when Maria Larkin left her business in New York, and came to Kingston to take care of her stepmother, her father agreed at some future time to convey his house and lot to her, either for taking care of him and his wife or for taking care of Mrs. Larkin alone. But when the deed was actually executed, an additional consideration was agreed upon, —the future support of the grantor. Both of the defendants in their depositions say that that consideration was agreed upon, and we think, under the circumstances, the fact so testified to should be deemed established. Hence, a portion of the consideration for the conveyance in question being an agreement by the grantee for the future support of the grantor, the deed to the plaintiff must be held fraudulent and void. Jackson v. Parker, 9 Cow. 73; Robinson v. Stewart, 10 N. Y. 189; Young v. Heermans, 66 N. Y. 374; Todd v. Monell, 19 Hun, 362; Strong v. Lawrence, 58 Iowa, 55, 12 N. W. 74; Lawson v. Funk, 108 Ill. 502. And this is so although a portion of the consideration for the conveyance was legal and valid. Robinson v. Stewart, supra. And it is held that such a secret trust for the benefit of the grantor, although resting on an oral agreement, may be shown by parol, and, when proved, vitiates the deed. Coolidge v. Melvin, 42 N. H. 510; Rice v. Cunningham, 116 Mass. 466; Lukins v. Aird, 6 Wall. 78.

It is claimed, however, that at the time of the delivery of the deed, both Patrick Larkin and his daughter believed that the action to recover damages for the death of David Kain had terminated by the judgment in favor of the former, and hence there was no intent to defraud the plaintiff. This claim as to Patrick Larkin— his attorney residing in the same city, and an appeal being then pending in the action—does not require serious consideration. As to the defendant Maria, we are inclined to believe that, having knowledge of the action commenced by the plaintiff to recover damages for the death of the decedent, that fact made it her duty to institute inquiries as to the condition of the suit. Baker v. Bliss, 39 N. Y. 70. But if she had no knowledge that the plaintiff's action to recover damages was pending at the time of the conveyance, or of circumstances that made it her duty to inquire as to the condition of the suit, that fact could not avail her, unless she was a bona fide purchaser in good faith. If we are correct in our contention

that a portion of the consideration of the conveyance was a secret trust for the future support of the grantor, the deed was not made in good faith. Lukins v. Aird, 6 Wall. 78; Moore v. Wood, 100 Ill. 451; Lawson v. Funk, 108 Ill. 502–513. As said in Lukins v. Aird, supra:

"Such a transfer may be upon a valuable consideration, but it lacks the element of good faith; for, while it professes to be an absolute conveyance on its face, there is a concealed agreement between the parties to it inconsistent to its terms, securing a benefit to the grantor at the expense of those he owes. A trust thus secretly created, whether so intended or not, is a fraud on creditors, because it places beyond their reach a valuable right,—the right of possession,—and gives to the debtor the beneficial enjoyment of what rightfully belongs to his creditors."

In Robinson v. Stewart, supra, the defendant in his sworn answer denied that he knew of the existence of the note of the plaintiff at the time he took the conveyance, and there seems to have been no proof given in that regard. But there being a trust in favor of the grantor, the deed under which the defendant claimed was held void. In Moore v. Wood, supra, it is said that a secret "trust for the future support of a grantor, whether so intended or not, is a fraud on creditors." The trial court, however, found that the consideration of the deed was the promise of said Patrick to and with said Maria to convey the premises to her for her giving up her business and returning to his home to care for his wife, and for and in consideration of the moneys invested therein by her deceased mother. It will be observed that the consideration is not found to be the value of the services of Maria between the date of the promise and the delivery of the deed, but the promise made on or about Christmas. We are unable to find any evidence showing that the mother of the said Maria, who died about nine years prior to May 1, 1889, had any legal interest whatever in the premises in question. It does not appear that she had invested any money therein. It is possible that she may have loaned money to her husband, but the evidence in the case does not show any such state of facts. The finding of the trial court in this regard, therefore, is not sustained by the testimony. If the consideration of the deed was, as found in the court below, the promise of Patrick Larkin, made about Christmas, 1888, to convey the premises to his daughter for her future services in supporting or taking care of his wife, such a promise was fraudulent and void, under the authorities above cited, as to existing creditors. It was an agreement by a debtor to convey all his tangible property to a grantee in consideration of the future care of a member of his family. If such a transaction could be sustained, any debtor owing property ample to meet his obligations has it in his power to make a contract with one member of his family for the future support or care of another member, and to divest himself of all his estate, and prevent the collection of any debt, however meritorious.

We think in this case there was no sufficient legal or valid consideration for the conveyance in question, whether such consideration was the arrangement between the parties made on Christmas,

1888, whereby the said Patrick agreed to convey the premises to said Maria in consideration of her future care of Mrs. Larkin, or the agreement entered into when the deed was delivered for the future support of the grantor. In either case the contract was fraudulent and void as against an existing creditor under the authorities to which we have referred, and the grantee could not be deemed a purchaser in good faith.

We conclude that from the facts appearing in this case the inference must be drawn that the conveyance in question was executed with intent to hinder, delay, and defraud the plaintiff, and hence that the judgment should be reversed, and a new trial granted; costs to abide the event.

PARKER, P. J., and LANDON, and HERRICK, JJ. concur. MERWIN, J., concurs in result.