## NUGENT v. FOLEY.

(Supreme Court, Trial Term, Wyoming County. August, 1912.)

1. FRAUDULENT CONVEYANCES (§ 80*)—BENEFITS RESERVED TO GRANTOR—SUPPORT OR CARE.

A conveyance of all a person's property, real and personal, in consideration of the transferee's agreement to maintain and support the transferror during his lifetime, pay his funeral expenses, and also pay a few small store bills, is void as against existing creditors of the transferror.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 206–209; Dec. Dig. § 80.*]

2. FRAUDULENT CONVEYANCES (§ 168*)—CONVEYANCES IN TRUST FOR GRANTOR.

A transfer by a debtor of all his property, real and personal, without consideration, in trust for his benefit during life, and after his death for the payment of debts, is conclusive evidence of fraud as to existing creditors, and the innocence of any fraudulent intent on the part of the transferee will not protect his title.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 494, 520; Dec. Dig. § 168.*]

3. LIS PENDENS (§ 22*)—PROOF AND EFFECT—EFFECT ON PRIOR UNRECORDED CONVEYANCE.

Code Civ. Proc. § 1671, providing that, after a notice of the pendency of an action is filed, a person whose conveyance or incumbrance is subsequently executed or subsequently recorded is bound by the proceedings in the action after the filing of the notice to the same extent as if he was a party thereto, does not enable a party by filing a lis pendens to acquire an interest in the property described therein superior to the rights of another under an unrecorded deed, who is not made a party to the action.

[Ed. Note.—For other cases, see Lis Pendens, Cent. Dig. §§ 31, 34–37; Dec. Dig. § 22.*]

4. FRAUDULENT CONVEYANCES (§ 194*)—REMEDY WHERE RIGHTS OF THIRD PERSONS HAVE INTERVENED.

Where a fraudulent conveyance could not be set aside, because the rights of a third person had intervened, but a part of the purchase price due from such third person had not been paid to the fraudulent grantee, but was held pending the outcome of the litigation, it could be proceeded against in lieu and substitution of the property fraudulently transferred.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 608–610; Dec. Dig. § 194.*]

Action by Margaret Nugent, individually and for the benefit of all other creditors of Jeffrey Powers, deceased, against Anastasia Foley, to set aside a conveyance of certain real property. Judgment for plaintiff.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

137 N.Y.S.—45

Michael L. Coleman, of Warsaw, for plaintiff.
Woodworth & Greff, of Warsaw, for defendant.

WHEELER, J. In June, 1911,. Jeffrey Powers died intestate and childless. His wife had died the previous March. Both, at the times of their death, were advanced in age, and for some time prior to their death in feeble health. In the month of February, 1909, the decedent caused a letter to be written to the plaintiff, who was a sister of Mrs. Powers, requesting Mrs. Nugent and her husband to come to the decedent's home in the town of Covington, Wyoming county, and assist in caring for the decedent and his wife, and to perform labor upon the decedent's farm. The plaintiff and her husband thereupon broke up their home in Brooklyn, and came to the decedent's home, under an agreement that they should be well paid for their services.

I think the evidence fully and fairly sustains the plaintiff's claim, not only that these services were rendered upon a clear understanding that the plaintiff would be compensated for what was done, but also that the fair value of the services rendered by the plaintiff was the sum of $310. All the plaintiff ever received on account of these services was the sum of $4.50, the proceeds of certain cream money from cows on the farm. Consequently the decedent's estate is indebted to the plaintiff in the sum of $305.50, with interest from April 1, 1911.

After his wife's death, the defendant, a niece of the decedent, came to live with him, and the plaintiff returned to Brooklyn. On March 21, 1911, while the plaintiff's claim remained unpaid, Jeffrey Powers, the decedent, transferred all his property, real and personal, to the defendant. The consideration for these transfers was the agreement by the defendant to maintain and support the grantor during his lifetime, and pay his funeral expenses after his death, and also to pay a few small store bills owing by the defendant.

This action was commenced on August 7, 1911, at which time the lis pendens, together with the verified complaint, was filed in the office of the clerk of Wyoming county. This action is to set aside the conveyance so made, as fraudulent against the creditors of the decedent, and is prosecuted, not only for the benefit of the plaintiff, but for the benefit of all such creditors.

On August 3, 1911, however, prior to the commencement of this action, the defendant conveyed said real estate to one Martin Weiler. She remained in the apparent possession of the farm, and the deed to Weiler was not placed on record until September 12, 1911. Such conveyance was not known to the plaintiff at the time of the commencement of this action. Weiler knew at the time that the plaintiff was asserting claims against the estate. Weiler was a witness on this trial, and practically admitted that he knew of the plaintiff's claim when he negotiated for the purchase of the farm and took the deed to it. The agreed purchase price of the place was $3,100. Of this Weiler paid the defendant $1,000 down, and bor-

rowed the sum of $2,100 of one Quinlan, to secure which he gave Quinlan a mortgage on the property, under an arrangement between the defendant, Weiler, and Quinlan that said amount should be placed in the bank at Wyoming to await the determination of this action, and supposedly to take care of any claims established against the estate of the deceased.

[1, 2] It is perfectly well established that the conveyance made by the decedent to the defendant under the circumstances was void as against the existing creditors of the decedent. A transfer by a debtor of all his property, real and personal, without consideration, and in trust for him and his benefit during his life, and after his death for the payment of his debts, etc., is per se conclusive evidence of fraud as to existing creditors, and no extrinsic circumstance or evidence aliunde is necessary to establish a fraudulent intent. The innocence of any fraudulent intent upon the part of the transferee will not protect his title. Young v. Heermans, 66 N. Y. 374; Kain v. Larkin, 4 App. Div. 209, 38 N. Y. Supp. 546. The right of the plaintiff to maintain this action seems fully established both on principle and by authority. It only remains to consider the form of the judgment, and the extent of the relief to be given, so as to properly protect all persons interested.

[3] Weiler, the grantee from the defendant, is not a party defendant to this action. His deed bears date August 3, 1911, but it was not recorded until September 12th following. The lis pendens in this action was filed August 7th. Inasmuch as Weiler is not a party defendant, any judgment the court may render in this action cannot bind or affect him, unless it be by virtue of the provisions of section 1671 of the Code of Civil Procedure, providing as follows:

"Where a notice of the pendency of an action may be filed, as prescribed in the last section, the pendency of the action is constructive notice, from the time of so filing the notice only, to a purchaser or incumbrancer of the property affected thereby, from or against a defendant, with respect to whom the notice is directed to be indexed, as prescribed in the next section. A person, whose conveyance or incumbrance is subsequently executed, or subsequently recorded, is bound by all proceedings taken in the action, after the filing of the notice, to the same extent as if he was a party to the action. In any action, other than an action to foreclose a mortgage or for the partition of real property or for dower, in which a notice of the pendency thereof has been filed, and in which it shall appear to the court upon a motion made as hereinafter provided, that adequate relief can be secured to the plaintiff by a deposit of money, or in the discretion of the court by the giving of an undertaking, as hereinafter provided, where the cancellation of such notice is not otherwise expressly provided for or regulated, any defendant or any other person having an interest in the property affected by the action, may apply for the cancellation of such notice. Such application shall be by motion made in the action upon notice, to be directed and approved by the court, to all the parties to the action and to such other persons as the court may direct. If the court on the hearing of the motion shall decide that adequate relief can be secured to the plaintiff and that the case is one in which the judgment sought to be enforced against the real property mentioned in said notice of pendency of action may be secured by the deposit of the amount claimed or by the giving of an undertaking, the court may make an order directing that the applicant make a deposit in court of a sum of money, or in the discretion of the court, give an undertaking with at least two suffi-

cient sureties for the payment of any amount which the party filing such notice of the pendency of action, or any other party to the action claiming an interest or lien upon such real property may recover in the action, and will pay the judgment sought to be enforced against said real property, in the event that a final judgment shall be recovered therein and conditioned for the performance of such other terms as the court may direct, and that thereupon, and upon such other terms, if any, as the court shall deem equitable, an order be made cancelling such notice of record. The sum required to be paid into court or the amount of the undertaking, shall be at least the amount claimed by the plaintiff or the value of the property affected by the action or the interest of the party filing such notice therein, with interest and costs, and if the court allow an undertaking to be given, a copy thereof with notice of filing of the same, shall be served upon the attorney for the plaintiff and upon such other parties as the court may direct and notice of not less than two days of the justification of the sureties. Upon the deposit of the sum required into court, or if an undertaking is given, upon the approval of such undertaking by the court or a judge thereof and the compliance with such other terms as may have been imposed, the court may direct that the notice of pendency of action be cancelled of record by a particular clerk or by all the clerks with whom it is filed and recorded, which cancellation must be made by a note to that effect, on the margin of the record, referring to the order. Unless the order is entered in the same clerk's office, a certified copy thereof must be filed therein, before the notice is cancelled. After a notice of pendency of action has been cancelled as herein provided, neither the proceedings in the action, nor any judgment which may be rendered therein, shall affect the real property described in any notice of pendency which has been cancelled pursuant to the provisions of this section."

While the letter of the section might possibly suggest that by filing the lis pendens a party might acquire an interest in the property described in the notice superior to the rights of another under an unrecorded deed, nevertheless we do not think such was the purpose or object of the section of the Code in question. The precise question was under consideration, and fully and ably discussed, in the case of Lamont v. Cheshire, 65 N. Y. 30, where under a prior section of the Code, worded substantially like the present section of the Code of Civil Procedure above quoted, it was held the unrecorded deed gave title superior to that acquired by the lis pendens. In that case certain attachments were levied against real property by the filing of lis pendens, but prior to the filing of the notice the defendant had conveyed the property sought to be attached to a third party by deed, which, however, had not been recorded prior to the date of filing of the notice; but the court held that by filing the notice of pendency the attaching creditor did not thereby acquire a lien superior to the interest of the grantee under the unrecorded deed.

In view of this decision, I think the court should not here make any decision which would, in effect, avoid the conveyance from the defendant to Weiler; for he is not a party defendant, and is entitled to his day in court before his rights can be foreclosed and defeated.

[4] This, however, does not defeat the plaintiff's claim; for it is evident, under the circumstances of this case, full justice may be done to all parties. Although it is claimed that the full purchase price of the farm has been paid to the defendant, such, in fact, is not the case, because $2,100 of the purchase price, being the pro-

ceeds of the mortgage given Quinlan by Weiler, has never in fact been paid her, so as to give her absolute control of the same, but is the subject of special deposit in the Wyoming Bank, to be held pending the outcome of this litigation. This fund may be proceeded against in lieu and substitution of the real property itself. This is an inherent power which a court of equity may exercise for the protection of the parties in interest.

A decree may be entered, declaring that the conveyance and transfers set forth in the complaint, made by Jeffrey Powers to the defendant herein, are and were fraudulent and void as against the creditors of the said Powers existing at the time of his death; that a receiver be appointed to receive and to hold for distribution, pursuant to the further orders and directions of this court, said fund of $2,100 and any accumulations thereon, deposited in the Wyoming Bank; that the defendant account for and pay over to such receiver the balance of the purchase price of said farm, to wit, the sum of $1,000, and also the value of the personal property transferred to her, which, for the purposes of this action, is stipulated at $125; that a referee be appointed in and by the decree to be entered herein, whose duty it shall be to ascertain and determine the amount and extent of any and all other claims owing to creditors of said decedent, and to that end he advertise for such creditors to appear before him and file proof of their respective claims against said estate; that the representatives of said estate and the defendant herein be at liberty to challenge such claims and litigate the same before such referee, and said defendant may present and have determined by said referee the amount of any claim or claims she may have against said estate. Said referee will also determine the amount of the funeral expenses of said decedent. The amount of the plaintiff's claim herein against said estate is hereby fixed and adjudged to be the sum of $304.50, with interest thereon from April 1, 1911. Said referee shall report to this court his findings and conclusions, to the end that such further judgment and decree may be made as shall be just and proper. Upon the coming in and confirmation of said report, let a further judgment be entered directing, first, the payment of the funeral expenses of said decedent; second, the costs and expenses of this action; and, next, the amount adjudged to be due and owing each creditor of said decedent in full, and, if there should remain insufficient to pay the same in full, then pro rata among the said creditors. The plaintiff is entitled to the costs of this action.

Let findings and judgment be drawn according to the views herein expressed.